UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL R. AULT,

   Plaintiff,         Case No.  1:15-cv-513

v.

               HON. JANET T. NEFF

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant,

              /

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Michael Ault seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

### STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who

is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 47 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.35, 62.) He successfully completed high school and attended some college classes. (PageID.64.) Plaintiff was previously employed as a gambling dealer. (PageID.330.) Plaintiff applied for DIB on April 8, 2013, and SSI on April 10, 2013, alleging that he had been disabled since February 1, 1992, due to PTSD, depression, the loss of his left eye and associated injuries, high pressure in his right eye, carbon monoxide poisoning, headaches, difficulty driving

at night, chronic pain in his feet, ankles, shins, elbows, and wrists, and injuries to his neck and lower back. (PageID.109, 232–42.) Plaintiff's applications were denied on July 5, 2013, after which time he requested a hearing before an ALJ. (PageID.140–149.) On August 14, 2014, Plaintiff appeared with his counsel before ALJ Janice Holmes for an administrative hearing with testimony being offered by Plaintiff, his mother, and a vocational expert (VE). (PageID.56–106.) At the hearing, Plaintiff amended his alleged onset date to May 24, 2012. (PageID.61, 257.) In a written decision dated September 9, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.35–55.) On April 24, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.23–27.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g), proceeding pro se.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1]   If the Commissioner can make a

---

[1] 1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC).  *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Holmes determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 24, 2012, the amended alleged disability onset date. (PageID.40.)  At step two, the ALJ determined Plaintiff had the following severe impairments: 1) loss of central visual acuity; 2) degenerative disc disease of the cervical and lumbar spine; and 3) affective disorders. (PageID.40.)  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.41–42.)  At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he should not climb ramps, stairs, ladders, ropes, or scaffolds.  He is limited to frequent stooping, kneeling, crouching, and crawling.  He should avoid hazards in the workplace including unprotected heights, moving mechanical parts, and commercial driving.  He is limited to simple, routine, and repetitive tasks.  He should have no public exposure and occasional contact with co-

---

(20 C.F.R. § 404.1520(f)).

workers.  He should have the option to sit or stand, but one that would not take him off task more than 10% during an average 8-hour workday.  He should avoid concentrated exposure to pulmonary irritants such as dust, gas, fumes, and other pulmonary irritants and chemicals.

(PageID.42–43.)  Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (PageID.48.)  At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations.  *See Richardson*, 735 F.2d at 964.  The VE testified that there existed approximately 7,000 jobs within the state of Michigan and 205,000 jobs within the nation in the positions of assembler, inspector, and hand packager that an individual similar to Plaintiff could perform.  (PageID.98–99.)  This represents a significant number of jobs.  *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from May 24, 2012, through September 9, 2014.  (PageID.50.)

## DISCUSSION

Plaintiff's Statement of Errors raises the following claims:

1. Collaborating testimony evidence was not weighed in the decision;

2. The decision fails to properly evaluate the treating physician's medical source statement; and

3. The Court should remand the decision because of new and material evidence under sentence six.

(PageID.450.)  The Court will discuss the issues below.

**1.**

In support of Plaintiff's application for benefits Plaintiff's mother, Nancy Ault, testified at the administrative hearing and submitted a third-party function report to the Commissioner.  She testified that she does the vacuuming and cleaning for Plaintiff, but that her son was able to perform those activities.  (PageID.93.)  He was depressed, and had difficulties in concentration and motivation.  (PageID.94.)  On the function report, Plaintiff's mother stated that her son was limited in his ability to work due to the loss of his left eye and associated pain from the injury. (PageID.293.)  She stated that she did the heavy housework and helped care for his children, but she noted that Plaintiff had no problem taking care of his personal needs, nor did he need reminders to do so.  (PageID.294–95.)  Plaintiff was able to make simple meals like sandwiches and frozen meals, but she did the larger meals and baking.  (PageID.295.)  Contrary to her testimony, Plaintiff's mother stated he was unable to perform any household chores.  (PageID.295.)  She noted Plaintiff was able to drive, go out alone, and handle money, but she stated that she did the shopping.  (PageID.296.)  Plaintiff could not walk far before he would need to rest (PageID.298.)  Finally, while he followed written and spoken directions "fine" and had no problems getting along with authority figures, Plaintiff did not handle stress well, nor changes in routine, and had trouble concentrating.  (PageID.298–300.) The ALJ's decision cited the third-party function report of Plaintiff's mother and Plaintiff's testimony, but did not cite to the testimony of Plaintiff's mother. (PageID.47.)

It is patent that an ALJ is not required to explicitly discuss every piece of evidence in the record. "While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party

… .'" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) (*quoting Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).  However, "[i]f lay witness testimony is provided, the ALJ cannot disregard it without comment, and must give reasons for not crediting the testimony that are germane to each witness." *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)).  It appears the ALJ incorporated the testimony and function report of Plaintiff's mother into her discussion of Plaintiff's subjective allegations.  The ALJ cited Ms. Ault's function report, but did not discuss any statements she made therein, instead crediting them as statements made by Plaintiff.  By failing to discuss the third-party statements and testimony of Plaintiff's mother, however, the ALJ failed to comply with *Maloney's* direction that ALJs must give reasons, germane to each witness, for not crediting the testimony.  *Id.*  The ALJ's error, however, is not necessarily one that requires reversal.  Rather,  "if the ALJ erroneously disregards a lay witness's testimony, the error is harmless if 'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Id.*  (citing *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1056 (9th Cir. 2006)).

The Court finds that is the case here.  Clearly Plaintiff has experienced a series of tragic circumstances in his life, most recently with the loss of his wife.  As one might expect from a family member under such conditions, Ms. Ault provides assistance to Plaintiff including cleaning, cooking, and caring for Plaintiff's children.  But Ms. Ault's testimony and function report do not establish that Plaintiff is limited beyond that found in the RFC.  At the hearing, Ms. Ault testified that, while it might be painful, Plaintiff is able to do household chores such as vacuum and clean.  He is able to prepare simple meals.  He can drive, take care of his personal needs, and handle

money—all without assistance or reminders. He gets along with others. Ms. Ault's vague statement that Plaintiff cannot walk far before needing breaks and has difficulty in concentration is not inconsistent with an RFC for light work with a sit/stand option and a limitation to simple, routine and repetitive tasks. (PageID.42–43.) In short, the ALJ's error here is harmless. No reasonable ALJ, having considered Ms. Ault's opinions, would have reached a different determination. Plaintiff's first claim of error is rejected.[2]

**2.**

On July 17, 2014, Dr. William Weiner, M.D., filled out a Medical Source Statement questionnaire regarding Plaintiff's RFC. The doctor's statement concluded that Plaintiff was much more limited than that found by the ALJ. For example, he noted that Plaintiff had depression, anxiety, and a personality disorder that all affected his ability to function. (PageID.431.) Plaintiff would "occasionally" have to lie down at unpredictable intervals during the workday. (PageID.431.) He could only occasionally bend and twist at the waist, (PageID.431.) He had a "marked" limitation regarding his ability to deal with ordinary work stress. His pain, medication side effects, and emotional problems all were severe enough such that he would be off-task for three or more hours in an eight-hour workday, and Plaintiff could be expected to be completely absent from work more than three times a month. (PageID.431.) Dr. Weiner concluded by assigning Plaintiff a "poor" prognosis, and stated that Plaintiff was currently off work, had been since 2010, and that it was "indefinite" when Plaintiff could return to work, noting that Plaintiff's condition was worsening. (PageID.432.) The ALJ gave only "partial weight" to the opinion, noting that it was considered for

---

[2]Because, however, the matter is being remanded to the Commissioner for reasons discussed below, on remand, the Commissioner should follow *Maloney's* directive that she supply germane reasons for her decision not to credit the testimony from Plaintiff's mother.

evidence of severe impairments at step 2, but that the doctor had opined on issues outside his area of expertise, failed to provide the objective support he relied on in making his opinion, and that the opinion was inconsistent with the evidence of record. (PageID.48.) Plaintiff argues that in this, the ALJ failed to provide "good reasons" for giving less than controlling weight to the doctor's opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It appears undisputed that Dr. Weiner qualifies as a treating physician.

The deference accorded to such opinions is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be

"supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

The doctor's opinions regarding how often Plaintiff would miss work or be off task were not entitled to controlling weight. They are conjectures, not a medical opinion. *See Murray v. Commissioner*, 1:10–cv–297, 2011 WL 4346473, at * 7 (W.D. Mich. Aug. 25, 2011) (collecting cases). Further, the issues of disability and RFC are reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d) (3); *see Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009). The ALJ was accordingly not bound to accept this aspect of the doctor's opinion nor provide good reasons for rejecting it.

As for the remaining limitations, the Court concludes the ALJ failed to provide good reasons for assigning them less than controlling weight. The ALJ discounted Dr. Weiner's opinion regarding Plaintiff's mental impairments on the ground that as Plaintiff's family physician, Dr. Weiner was opining on issues outside his area of expertise. (PageID.48.) As a medical doctor, however, Dr. Weiner was qualified to speak on such issues. *Lawson v. Comm'r of Soc. Sec.*, No. 1:11–cv–533, 2012 WL 4356804 at *4–6 (W.D. Mich. Sept. 24, 2012); *Walker v. Eyke*, 417 F. App'x 461, 464 (6th Cir. 2011) (in Michigan "[t]he practice of psychology does not include the

10

practice of medicine such as prescribing drugs, performing surgery, or administering electro-convulsive therapy"). Thus, for purposes of a disability claim, "[a] treating physician's opinion on the mental state of his patient constitutes competent medical evidence even though the physician is not a certified psychiatrist." *Bushor v. Comm'r of Social Security*, No. 1:09–cv–320, 2010 WL 2262337, at * 10, n.4 (S.D. Ohio April 15, 2010); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (where a medical doctor treating a claimant for chronic pain expressed opinions regarding the claimant's mental restrictions, those opinions constituted "competent psychiatric evidence" and may not be discredited by an ALJ on the ground that the doctor is not a board certified psychiatrist). To be sure, the specialization of a physician is an appropriate consideration for assigning weight to medical opinions. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). However such consideration appears to be more properly applied after the decision is made to give the opinion less than controlling weight. *See Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 115 (6th Cir. 2010) ("it was not error [to consider the doctor's lack of specialization] *after* declining to give [the doctor's] opinion controlling weight.") (emphasis added). Moreover, the other justifications provided by the ALJ—as applied both to the mental and physical limitations—do not amount to good reasons for rejecting the doctor's opinion.

The remaining reasons articulated by the ALJ are simply too ambiguous to permit meaningful review. While Defendant may be able to identify portions of the record that support the ALJ's assessment, the Court cannot find that the ALJ's conclusion is legally sufficient based upon such after-the-fact rationalizations. For example, it is not clear from the ALJ's discussion whether she found the opinion was entitled to less than controlling weight due to the lack of supporting evidence in the questionnaire itself, in Dr. Weiner's treatment notes, or both. Indeed, the

Commissioner's brief discusses both possibilities. (PageID.490–91.) As *Wilson* and *Gayheart* make clear, the task of articulating the rationale for discounting a treating physician's opinion rests with the ALJ.   In sum, the ALJ failed to articulate sufficient reasons for discounting Dr. Weiner's opinions.   In light of the fact that the doctor's opinions are inconsistent with the ALJ's RFC determination, the ALJ's failure is not harmless.  The ALJ's failure clearly violates the applicable legal standard and renders his decision legally deficient.  Accordingly, this matter will be remanded to the Commissioner for further consideration of Dr. Weiner's opinion.

**3.**

Plaintiff attached nine additional pages of medical records to his brief, and asks for a sentence six remand.  (PageID.463–65, 468–76.)  These records were not considered by the ALJ as they postdate the decision.  After review, the Court finds Plaintiff has not satisfied his burden necessary for a remand, and thus denies the request for a  remand under sentence six of § 405(g). .

"A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 482–83 (6th Cir. 2006).  The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision.  *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991)).  The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v.*

*Halter*, 279 F.3d 348, 357 (6th Cir. 2001). In a sentence six remand, the court does not rule in any

way on the correctness of the administrative decision, neither affirming, modifying, nor reversing

the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating

that the evidence Plaintiff now presents is "new" and "material," and that there is "good cause" for

the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also*

*Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005); *Cline v. Comm'r of Soc. Sec.*,

96 F.3d 146, 148 (6th Cir. 1996); *Balogh v. Comm'r of Soc. Sec.*, 94 F. App'x 286, 286 (6th Cir.

2004) (A sentence six remand "requires that all three elements be met."). Courts "are not free to

dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. The parties agree that the

proffered evidence is new and that good cause exists, but Defendant argues the evidence is not

material. (PageID.493–97.) In order for a claimant to satisfy the burden of proof as to materiality,

"he must demonstrate that there was a reasonable probability that the [Commissioner] would have

reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*

*v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988) (per curiam).

On April 5, 2015—nearly seven months after the ALJ's decision—Plaintiff sought

treatment from Dr. Kevin Kellogg for seizures. Dr. Kellogg noted that Plaintiff experienced buzzing

and dizziness while shopping and had collapsed. Plaintiff had an occipital skull fracture and a

subarachnoid hemorrhage. (PageID.470.) Dr. Kellogg stated that Plaintiff had experienced similar

symptoms when he was twelve, but no diagnosis was made and he was not placed on any

medication. (PageID.470.) Dr. Kellogg additionally noted that Plaintiff had passed out at least five

times in the last four to five months. (PageID.470.) Dr. Kellogg suspected Plaintiff had epilepsy,

13

ordered an EEG and MRI, and started Plaintiff on an anticonvultant (PageID.471.)  The EEG and

MRI scans revealed normal results. (PageID.472–73.) Plaintiff also had CT scans of his head and

cervical spine.   The CT scan on his head revealed a stable non-displaced right occipital bone

fracture, but an otherwise normal intracranial evaluation.  (PageID.474.)  The cervical spine CT

revealed a multilevel degenerative disc disease, most conspicuously at the C6-C7 level that had "at

least moderate" foraminal narrowing.  (PageID.475.)

On June 8, 2015, Dr. Kellogg authored a letter to Dr. Weiner.  He stated that he had

"initially seen" Plaintiff in the hospital on May 8, 2015 for a seizure with an occipital skull fracture.[3]

Dr. Kellogg stated Plaintiff had experienced at least three "spells" where he would experience

buzzing and dizziness and end up collapsing. (PageID.468.)  Dr. Kellogg concluded that Plaintiff

had epilepsy, and recommended placing him on medication.  (PageID.469.)

The additional evidence provided by Plaintiff would not have changed the ALJ's

decision.  As an initial matter, none of the proffered evidence appears to concern the time period at

issue—Plaintiff's amended onset date through the date of the ALJ's decision.  Dr. Kellogg's notes

instead speak of several seizures that occurred after the ALJ's decision.  If Plaintiff is arguing his

condition has worsened and he is now disabled, the proper course of action is to file a new

application for benefits.  Plaintiff also appears to argue that the diagnosis of epilepsy puts a name

to a condition that he has been suffering from for a long period of time and that this should reduce

him to a sedentary RFC.  (PageID.465.)  But such does not establish that Plaintiff is more limited

than that found in the RFC. Objective test results demonstrate Plaintiff has, at most, only moderate

---

[3]It is not clear what is meant by this sentence.  Dr. Kellogg treated Plaintiff on April 5, 2015, well before the May 8, 2015 date referred to by Dr. Kellogg and there are no medical records from Dr. Kellogg dated May 8, 2015. In any event, it does not appear the note is referring to a second seizure that caused an additional fracture.

degenerative disc disease in the cervical spine. He had a normal gait and stance. (PageID.469.) Dr. Kellogg did not place any limits on Plaintiff regarding walking or standing.  The ALJ's RFC determination already prohibited Plaintiff from exposure to workplace hazards, and commercial driving.  Plaintiff has not demonstrated that he is further impaired. Accordingly Plaintiff's request for a sentence six remand is denied.

### CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence.  Accordingly, the Commissioner's decision is **REVERSED** and this matter is **REMANDED** for further factual proceedings under sentence four of 42 U.S.C. § 405(g).

Dated:  April 25, 2016                                          /s/ Janet T. Neff
                                                                              JANET T. NEFF
                                                                              United States District Judge